# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |
|---|---|
| **THOMAS JOE BRAXTON, III,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:22CV00560 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **MARTINSVILLE POLICE** ) | JUDGE JAMES P. JONES |
| **DEPARTMENT, ET AL.,** ) | |
| ) | |
| Defendants. ) | |

*Thomas Joe Braxton III, Pro Se Plaintiff; Jennifer D. Royer and Kristin B. Wright, ROYER LAW FIRM, P.C., Roanoke, Virginia, for Defendants.*

The plaintiff, Thomas Joe Braxton, III, a Virginia inmate proceeding pro se, filed this action under 42 U.S.C. § 1983, complaining that the defendant police officers and police department are liable to him for use of excessive force against him during his arrest. After review of the record, I conclude that the defendants' Motion to Dismiss must be granted.

## I. BACKGROUND.

Braxton's § 1983 claims arise from the following alleged sequence of events that I must take as true when addressing the defendants' Motion to Dismiss. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). In the late-night hours of January 1, 2020, while driving a friend's truck, Braxton encountered Martinsville City police officers. "[A] high-speed chase ensued, later resulting in a foot chase,

all of which was recorded on Police Dash and Body Camera[s]." Compl. 3, ECF No. 1. During the foot chase, Braxton "fired his weapon, a 'Taurus' 45 mm handgun a total of 3 times indiscriminately," and officers giving chase returned gun fire, hitting [ ] Braxton a total of five (5) times in his back and shoulder." *Id.* At that point, Braxton allegedly "discarded his weapon away from him, dropped to the ground and surrendered with both hands raised out in submission." *Id.* at 3-4. He yelled, "Please stop shooting. I don't have a weapon," and the firing stopped. *Id.* at 4. Defendant police officers Griffith and Panos allegedly saw his hands raised, but still opened fired on him while he was on the ground, shooting him four more times in the rear below his waist area. Griffith then placed his foot on Braxton's neck while officers placed handcuffs on him. Braxton was then arrested and airlifted to Roanoke Carilion Hospital, where he underwent treatment for nine gunshot wounds. He asserts that these alleged actions by Griffith and Panos violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

Based on these events, Braxton filed a § 1983 Complaint against Griffith, Panos, and the Martinsville Police Department, seeking compensatory and punitive damages. He signed and dated this pleading on September 26, 2022. The defendants have filed a Motion to Dismiss, asserting that Braxton's claims are barred by the applicable two-year statute of limitations. Braxton has responded, asserting

additional facts on which he argues for later accrual of his claims and for equitable tolling.

Specifically, Braxton claims that after the shooting, because of his drug use and medications provided to him at the hospital, he had no memory of the events that occurred the night of his arrest. He states, "When I finally awoke I asked how did I get there. Doctors told me I had been involved in a police shooting." Pl.'s Resp. Ex. 1, Braxton Aff. 1, ECF No. 29-1. After Braxton's release from the hospital, he was held at the Henry County Jail. While there, he learned that he had been charged for shooting at law enforcement officers, among other felonies. He asserts, "No one ever told me that I [had] been shot by several officers." *Id.* Braxton claims that he suffered a "big shock" when he viewed the officers' body camera footage of incident "during discovery for [his] criminal trial" that occurred sometime in August 2021. *Id.* at 2. He asserts that before viewing that footage, he did not know that officers shot him "[a]fter [he] had surrender[ed] with [his] hand[s] up as shown on the body [camera] footage." *Id.* at 1.

I take judicial notice of Henry County Circuit Court records available online.[1] They indicate that based on the events of January 1, 2020, a grand jury returned

---

[1] Fed. R. Evid. 201(b)(2) (permitting a federal court to take judicial notice of certain facts); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989) (explaining that a federal court may take judicial notice of state court proceedings that directly relate to the issues pending in the federal court).

indictments on May 18, 2020, charging Braxton with attempted capital murder of a law enforcement officer; use of a firearm in commission of a felony, second offense; possession of a firearm as a convicted felon; eluding police; possession of heroin with intent to distribute; and possession of a firearm while in possession of heroin. Braxton pleaded guilty to possession of a firearm as a convicted felon and to eluding police. As to the other charges, he waived his right to a jury trial. On August 11, 2021, a judge found him guilty on all counts and on December 22, 2021, sentenced him to a total of total of sixty-five years in prison.

## II. DISCUSSION.

"A Rule 12(b)(6) motion to dismiss tests only 'the sufficiency of a complaint.'" *Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[2] In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. However, the court need not accept legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements." *Langford*, 62 F.4th at 124.

Braxton presents his constitutional claims under Section 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken

---

[2] I have omitted internal quotation marks, alterations, and/or citations here and throughout, unless otherwise noted.

under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Because Congress did not include time limits in the statute for filing a § 1983 action, such cases are governed by the statute of limitations governing general personal injury actions in the state where the wrongful conduct allegedly occurred. *Owens v. Okure*, 488 U.S. 235, 239, 250 (1989). In addition, the state's tolling rules apply in calculating the timeliness of a § 1983 complaint. *Board of Regents v. Tomanio*, 446 U.S. 478, 484 (1980).

In Virginia, the limitations period for personal injury claims is two years. Va. Code Ann. § 8.01-243(A). Thus, Braxton had two years from the date when his § 1983 claims accrued to file suit. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). It is well established that "a cause of action [under § 1983] accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *United States v. Kubrick*, 444 U.S. 111, 123 (1979)). In other words, the cause of action accrues when the plaintiff is "armed with the facts about the harm done to him, [and] can protect himself" by investigating further and working diligently to prepare his legal claims for litigation within the statutory filing period. *Kubrick*, 444 U.S. at 123. "A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. Thus, if the

Complaint here is deemed filed within the limitations period, the action is timely. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991).

Braxton's excessive force claims center on the January 1, 2020, incident during which he suffered gunshot wounds from shots fired by the defendants, allegedly after Braxton had discarded his weapon and surrendered. The defendants argue that Braxton was presumably aware of these injuries when they happened. Therefore, they treat January 1, 2020, as the date on which Braxton's claims accrued.

If Braxton's claims accrued on January 1, 2020, under Va. Code Ann. § 8.01-243(A), he had until January 3, 2022, to file a timely § 1983 action raising those claims. For purposes of this Opinion, I will presume without finding that Braxton delivered the Complaint to officials for mailing to the court on September 26, 2022, the date when he signed and dated his pleading. *Lewis*, 947 F.2d at 735 (holding that prisoner plaintiff's § 1983 complaint was deemed filed when he "relinquished control of it to prison officials" for mailing to court). As such, Braxton filed his Complaint, at the earliest, on September 26, 2022, more than eight months outside the two-year filing period under the statute.

Braxton argues that his excessive force claims against the defendant officers did not accrue on January 1, 2020. Rather, he states that he first became aware of his present claims in August 2021, when prosecutors provided him the body camera footage during discovery in the criminal proceedings. He contends that only from

watching the footage on some unspecified date could he have discovered that officers had used excessive force against him by shooting him when he was unarmed. Based on these assertions, Braxton argues that his claims accrued sometime in 2021, making his Complaint timely filed.

I cannot agree that Braxton has alleged sufficient facts to make such a showing. Braxton knew before he left the hospital that he had been shot and injured by police officers. He also knew soon thereafter that he faced criminal charges related to the shooting incident. Thus, I find that well before the return of the indictments in May 2020, Braxton "possesse[d] sufficient facts about the harm done to him that reasonable inquiry [would have] reveal[ed] his cause of action" against the officers. *Nasim*, 64 F.3d at 955. As part of preparing for trial, he or his counsel had opportunities from early in 2020 to make such an inquiry into the evidence of what happened on January 1, 2020, including making a request to review all the available police video footage. In other words, in January 2020, Braxton had sufficient awareness of his injuries at the hands of the defendants to trigger his obligation to protect his rights by making such an inquiry. *Kubrick*, 444 U.S. at 123. He simply has not alleged any circumstance that prevented him from investigating, nor has he made a showing that he could not have discovered his excessive force claims earlier through reasonable inquiry into the details (and video footage) of the shooting. For these reasons, I conclude that his claims accrued in the first five

months of 2020 — while he was in the hospital, very shortly thereafter, or at the latest, in May 2020.  Because his Complaint is deemed filed as of September 26, 2022, it was not filed within two years of any of these dates.  Thus, I conclude that it was not filed within the statutory filing period.

Braxton also argues that he is entitled to equitable tolling of the limitation period under Virginia law.  "[E]quitable estoppel provides the only arguable exception to the Commonwealth's general rule against recognizing any non-statutory basis for tolling limitations." *Battle v. Ledford*, 912 F.3d 708, 714 (4th Cir. 2019).  To invoke equitable estoppel, "a plaintiff must prove . . . that the party claiming estoppel was misled to his injury by the defendant in a way that prevented timely filing." *Id.*  Specifically, this type of showing has several elements that the plaintiff must establish "by clear, precise, and unequivocal evidence," as follows:

> (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the fact; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

*Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 266 S.E.2d 887, 890 (Va. 1980).

Braxton asserts that the defendants (the officers and the police department itself) "wrongfully deceived and misled [him] . . . as to his guilt and their culpability

for the amount of times he was shot." Pl.'s Resp. 4, ECF No. 29. He contends that the defendants did so by placing him in custody "under the belief that his claimed injuries were the sole result of his alleged criminal offense(s) and the proper police response for which he was charged." *Id.* He claims that the prosecution "produced and made available" the body camera footage of the alleged excessive force on August 11, 2021. *Id.* at 4. Thus, he seeks tolling from January 1, 2020, until August 11, 2021.

I find no factual support for Braxton's equitable estoppel argument. First, he states no facts demonstrating how anyone misrepresented to him the events of January 1, 2020, or how anyone acted with an intention to mislead or deceive him into failing to recognize potential excessive force claims. Second, Braxton fails to show that anyone purposely delayed making body camera footage available to him. He and his defense counsel had clear motivation to seek production of all available video footage of the January 1, 2020, events as soon as possible after Braxton's arrest and certainly after return of the indictments in May 2020. Indeed, from state court records, August 11, 2021, appears to be the trial date, and Braxton's Response Exhibit 3 appears to be a list of trial exhibits presented during that proceeding. ECF No. 29-1. Neither this exhibit list nor any other allegation in Braxton's submissions shows that anyone concealed or refused to produce the body camera footage until

the trial on August 11, 2021. Therefore, I conclude that Braxton has not made the necessary showings to invoke equitable estoppel under Virginia law.

Finally, I also conclude that Braxton has not stated facts supporting invocation of federal equitable tolling.

> Equitable tolling is reserved for those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result. The Supreme Court has explained that generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.

*Battle*, 912 F.3d at 718. As already discussed, I cannot find that Braxton has demonstrated diligent pursuit of his civil rights related to the January 1, 2020, shooting, or that he has alleged that any "extraordinary circumstance [external to his own conduct] stood in his way" of promptly pursuing his potential civil rights claims. *Id.*

### III. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** that the defendants' Motion to Dismiss, ECF No. 22, is GRANTED, and the Complaint is DISMISSED.

A separate Judgment will enter in favor of the defendants.

ENTER: July 5, 2023

/s/ JAMES P. JONES
Senior United States District Judge